Case number 223251 Christopher Cooper v. City of Columbus OH et al. Oral argument not to exceed 15 minutes per side. Ms. Gelsomino, you may proceed for the appellant. Good morning your honors. My name is Sarah Gelsomino along with Carolyn Hyatt. We represent the estate of Deontay Bell McGrew and actually his mother and other family members are here with us this morning in court also. I'd like to reserve three minutes please for rebuttal. This is a police shooting civil rights case. Deontay Bell McGrew was killed by two Columbus police officers, Nowrooski and Bassey in October of 2015. He was shot in the back, from the back five times while he was sitting in the back seat of a car. And we're here today asking in this de novo review for this court to reverse the opinion of the district court in its entirety because the court mistakenly disregarded myriad of disputed facts in this case which go to the heart of the constitutional issues about the justification offered by the officers in this use of deadly force. The issues before you are whether there was a constitutional violation, whether qualified immunity was properly granted. There's also a Monell claim in this case which we contend also should be sent back to the court for, to the jury to consider and whether state law was properly denied. Also whether if there were, if there was a constitutional violation, whether it was clearly established. Yes, that's part of the qualified immunity analysis, yes. And in this case we contend. That's a separate, I mean the way you framed the questions, you skipped one. Sorry about that. Okay. That was in my qualified immunity portion in my head, but thank you for clarifying that. And it's our contention, your honor, that in this case essentially what the district court found is disregarding, she disregarded the disputed facts over the justification because of the presence of a gun. The mere possession or presence of a gun on the scene. Well, she says there's evidence when Bassey, is that his name? I believe it's Bassey, but yes. Bassey shot from outside that Bassey said that he not only had seen the gun, but he saw the decedent reach for that gun and that's when he fired. Now, isn't that a circumstance where there's imminent threat of deadly harm to the officers reaching for a gun? If that fact was not disputed. Okay, who disputes that fact? That fact is disputed by a number of things. First of all, Naruski, who's the other officer who's actually on top of. Yeah, he didn't see the gun, but he was told that the, yeah. He's not, let's segment this for the first shot from Bassey and the six other shots, I guess. Let's talk about Bassey shooting first. And why isn't there enough there to establish the imminent harm to the officers when he knows there's a gun and he's reaching for the gun? What more do you need? Whether or not he reached for the gun is disputed. Well, Bassey said he did, right? And Naruski said he didn't. And so the two officers dispute each other. Did the other officer say he didn't or that he didn't see it? He never saw the gun, felt the gun, or felt Deontay reach for the gun. But he didn't, he didn't. That's not, that just means he didn't see it. It's not that he disputes the fact. He doesn't have an opinion on it. Well, the other part of the record that disputes this fact is that Naruski's testimony is that he was on top of Deontay in the backseat, on top of Deontay's back, that Deontay was facing down in the backseat. That is different than what Bassey says, that Bassey's testimony is that the two were belly to belly in the backseat. This is important, that orientation is important, because what Bassey says is that he saw the gun in Deontay's pocket, never outside of his pocket, and that his right hand reached down toward the area of his pocket, and that was his justification. There's no dispute that your client's decedent had the gun, is there? That is correct. We unfortunately are not able to dispute that fact. Yes, there was a gun found after the fact, still in his pocket. It was never out of the pocket. Are you saying that the other evidence somehow is inconsistent with Bassey's testimony that he saw him reach for the gun? Is that your position? Yes, I think it's critical. The positioning of the two in the backseat is critical, because if Bassey says that he sees Deontay's right gun while Deontay's on his back, that would be his right hand facing toward the front of the car, right? That would be the area of the gun, but if you take Naruski's version of events to be true, Deontay's facing down. That means that Deontay's hand facing the front of the car was actually his left hand, which was nowhere near the gun. I know that's complicated and I said that quickly. Did you follow, Judge? Sorry. The whole thing, that's the other problem, is that this whole incident happened very quickly, right? What's the whole time frame of Bassey shooting and then the other officer shooting? Are we talking just a few seconds? Yes, it happens very quickly. The whole thing happens very, I mean, you've got a lot going on here and you say, well, one officer's suit is to the right, one is to the left, that his feet are in on the car. I mean, it's so quick that it's hard to pin it down, because it's such a quick happening circumstance. It does happen quickly, yes, but in terms of the positioning of the feet in the car, the district court, again, found that those disputes weren't material, essentially because of the presence of the gun. We strongly disagree with that. The district court is, I mean, if the person who ends up being shot has a gun and the officer reasonably perceives that the individual is trying to access that gun to possibly use it against the officer, it doesn't matter under the law if the officer is badly wrong. I mean, he could be, he's still going to likely be entitled to qualified immunity under those circumstances. Sure, the law allows for mistakes by the officers, correct. However, he's even establishing that it's a mistake doesn't get you very far in terms of actually succeeding on this appeal. And that's not what we're arguing, Judge. We're arguing that there is a dispute of facts which specifically disputes Nowrooski, moving to Nowrooski, the second shooter, the one who shot the five shots. Is there anything you want to say about Bassey? Because your best argument is somehow that the positioning of the two refutes his testimony. That I saw him reach for the gun. Yes, Judge. The evidence in that way refutes his testimony. And just one other small point on that would be that the tint of the car windows, which Nowrooski testified was so dark that he wasn't able to see it and had to open the door and reach into the vehicle. It kind of belies the statement of Bassey that he could see into the car. But beyond that, that is the dispute that we believe for Bassey, yes. Nowrooski, and this is significant because as you know, each individual use of force has to be justified. And this is the fatal shots. The fatal shots come from Nowrooski. Nowrooski's only justification for shooting is that Deontay came out of the car, feet off the car, reached toward his waist and turned quickly toward him. Simply Deontay getting out of the car while saying, chill man, I'm coming, which I don't know, is apparently what Nowrooski was trying to get him to do to get out of the car to begin with anyhow. Him getting out of the car in possession of a gun is not sufficient in the Sixth Circuit according to this law. And this is actually just recently addressed by the Sixth Circuit in the case of Redrick Pruitt. In that case... The interesting thing, Nowrooski didn't know whether the deceit fired the first shot, right? He knew that there had been a shot fired, but he didn't know whether Bassey fired the shot or whether the decedent did, right? That is the city's position, the defendant's position on that, yes. Is there any dispute about that? Well, it is our position that taken in the light most favorable to the plaintiff at this point that there is a dispute over whether the hands of Deontay were ever in any kind of position to actually reach for or shoot that gun. And Nowrooski, who was on top of him, knew that and cannot testify to anything differently. So all of those lights in effect most favorable to the plaintiff need to be taken to a jury to determine whether the jury believes that Nowrooski could have reasonably, objectively reasonably believed Deontay, who he was on top of touching with his entire body and whose hands he never felt go down toward the gun, could have reasonably believed that Deontay had just shot. I would like to step back to the beginning of this interaction because I understand how quickly everything happened and the way it could be viewed by the different parties. But the beginning of this was supposedly a consensual encounter. Tell me your understanding of what the record reflects regarding how it got converted from a consensual encounter in which a citizen has an absolute right to say, I'm not going to talk to you. Exactly, Judge. And it is our position that it never was converted to anything beyond a consensual encounter and that Deontay saying, what did I do while the officer was pulling on him was within his rights because it was simply a consensual encounter. The facts show that these people were sitting in a parked car not committing any crimes. There was no reason to stop these people other than the two officers decided to do this consensual encounter. And what is your understanding of the purpose of the assignment of the two officers? Sure, so my understanding is that they're part of this group of officers on the community response team. They're a group of five officers. That's why there were three other officers who could arrive right after the shooting and tell us where Deontay was actually sitting, which disputes Naruski's version of events that he was outside of the car. And so these officers are just patrolling and searching, using consensual encounters to try to find and make felony arrests. That's the testimony. Yeah, it was my understanding that the record was clear that the purpose of this was to engage in felony warrants. Well, it's not felony warrants, right, because there was no warrant. But yes, they're trying to go and search out criminal behavior, but there was no criminal behavior happening. The only thing that the defendants rely on is Naruski claiming that he smelled marijuana somewhere around the car. Basie doesn't smell that marijuana. And then there's no other crime that anyone alleged to have committed anywhere in or around that car. Certainly there was no confusion about it, and Deontay complied with the officer's request to put his hands on the seat of the car and then moved around in the car, and it's Naruski's testimony that he put his hands down. Based on that and the smell of marijuana, Naruski comes to this wild conclusion that he's an armed drug dealer, and so he then is entitled to reach in and grab him out of the car. This entire encounter was created by the officers, which is significant, particularly for the federal law claims and should also be returned to the jury. The weapon was actually tested by the police, isn't that correct? I believe it was and had not been. There were fingerprints on that that they did not, so many that they could not identify it as having fingerprints from Mr. Bell. That is my recollection, Judge, but I am not 100% sure about that as I stand before you. You'll have your rebuttal time. Thank you very much. Can we get the timing back up on the screen? We can. I've told them yesterday I'd rather have it right there, but we can't. Oh, well, I don't care where it is, that's fine, sorry. No, it's all right. The reason they turned it off was because I told them to. Well, I would say that's the thing we do. Thank you. I'll try and put it back up if you'd like. No, thank you. Good morning. May it please the Court. My name is Michael Halloran, and I represent the defendants John Nowrooski, Matthew Bassey, and the City of Columbus in this appeal. Judge Stranch, I'd like to start by addressing the last question that you asked opposing counsel. The Columbus Division of Police lab tested the weapon for DNA. There were four DNA profiles. I believe, now this evidence isn't in the record, but I believe that the process by which a lab uses to test a weapon for DNA would then prevent the lab from testing for any type of fingerprints. Because there were four DNA profiles, that DNA test was inconclusive. That's helpful, thank you. The facts that created the reasonable suspicion for the investigatory stop by John Nowrooski and Matthew Bassey at the initial encounter were not only the odor of marijuana that Officer Nowrooski smelled, but after they approached the vehicle, the movements within the back seat... Well, I think there's a preliminary question that's concerning me in this case. Is that the testimony is, it was a consensual encounter. Isn't that correct? That's correct. At the incident. In a consensual encounter, an individual has a right, don't they, to say, I don't want to talk to you, Mr. Officer. Isn't that correct? That's correct, Your Honor. And a citizen can also walk away and say, I'm not going to talk to you. Right? That's correct. So, help me understand why the odor question, when you are initiating a consensual encounter, is not problematic for your case. Because here you've got one officer, purportedly 10 to 15 feet away from the car, who said, I think, you know, I smell burnt marijuana. The other officer who is there says, I smelled an odor also, but I could not identify it as marijuana. Both these officers are trained in the use of narcotics and marijuana and should have been trained the same way. And so you've got one who says, I think it's marijuana, and one of the officers who said, I can't say that. Why isn't that a difficulty for your case then to proceed on initially? I think there's two reasons why that is. Number one, the community response team was created to patrol what were deemed to be high crime areas. This specific apartment complex that the encounter occurred in had been a situation where there were a number of robberies, other crimes that had occurred, as well as some drug activity that had gone on. In addition to once the officers arrived at the vehicle, there was movements by Mr. Bell McGrew in the back seat of the car that indicated to Officer Nowrooski that he was either hiding weapons or drugs along those lines. As the Supreme Court said in Kansas v. Glover, reasonable suspicion to initiate this investigatory stop is far less than a 51% probability. So even taking away the odor of marijuana, there's still two additional facts that lead to the conclusion that supports Officer Nowrooski's opinion that there was reasonable suspicion. Here's the problem for me. You're at the summary judgment standard. You've got to take all of these facts in the light most favorable to this plaintiff. And that seems to me to be an overarching difficulty with this case. As I look through the evidence, I'm seeing it began as a consensual encounter which can be refused. You've got the disagreement between the officers over whether they smelled marijuana. And if we look at what was found, what is actually of record here, the only evidence of marijuana is Officer Coleman's discovery of a small baggie in the pocket of the boyfriend who owned the car, but was the boyfriend of the person sitting in the driver's seat. So my understanding of this record is there was no finding of marijuana in the car. No drug paraphernalia, no burnt marijuana, nothing around the car is in this record to show that there was. There was no marijuana on Deontay Bell. Is that not a correct reference to what this record shows? That is correct, Your Honor. There was no discovery of burnt marijuana or other drug paraphernalia other than the baggie of marijuana. How about the driver's comment? The officer said, are you smoking marijuana? And she said, you mean right now? Yes. Does that rise to reasonable suspicion that maybe marijuana smoking is going on, the comment, you mean right now? Based upon the totality of the circumstances of what the officers encountered and the standard that reasonable suspicion can be created. A very low standard, is it? It's not probable cause. Correct. We're talking about a Terry v. Ohio reasonable suspicion standard. Terry v. Ohio, the group was just looking at the windows of the department store and suspiciously and there wasn't really much going on there. But the Supreme Court said that was enough to temporarily detain them for a Terry stop to see if criminal activity was afoot. And here, I don't see any problem with the Terry stop. Well, I don't know if there was a response to that. No, it really wasn't a question, it was just a comment. Well, from my perspective, the reason for the stop became pretty irrelevant pretty quickly. It was the movement of the individual in the back seat that drove everything that occurred from that point on. Is that correct? That's correct, Your Honor. Both officers saw Mr. Bell-McGrew make movements down towards the floorboard in the back seat of the vehicle. It was after the second instruction and the second movement down that Officer Nowrooski opened the rear driver's side door and grabbed the wrist of Mr. Bell-McGrew. During that time period, Officer Basie noticed a weapon in the sweatshirt pocket of Mr. Bell-McGrew and alerted Officer Nowrooski of the presence of that weapon. Officer Nowrooski testified that he didn't recall if he went into the vehicle on top of Mr. Bell-McGrew or if he was pulled in, but it was during that time period that Officer Bell-McGrew in the back seat and that Officer Basie fired his weapon after seeing Mr. Bell-McGrew's hand move towards that sweatshirt pocket where the weapon was located. Officer Basie testified that this occurred over a matter of seconds. He fired his weapon, Officer Nowrooski testified that he immediately began to backpedal out of the vehicle, had glass in his face, and then Officer Basie testified it was less than five seconds between the time he fired his weapon and the time that Officer Nowrooski fired his weapon as Mr. Bell-McGrew is moving from this laying down or half laying down position in the back seat of the vehicle towards the open doorway. Now it is true that Officer Nowrooski never saw Mr. Bell-McGrew pull the weapon out and given the circumstances and timeline of events here, the threat that was presented to Officer Nowrooski at the time that he fired his weapon still gave Officer Nowrooski probable cause to use lethal force in that circumstance. Nowrooski is struggling with the decedent because he knows the decedent has the gun and the decedent is resisting giving the officer the gun or whatever. They're struggling because of the gun, right? Correct. The only reason that... Did the decedent ever break off the encounter and give up and say, you know, I've had cases before where there's a struggle and then the guy puts his hands up and said, okay, I'm no longer a threat. I'm not going to shoot you. I'm not going to... Was there ever any indication like that that the decedent broke off the encounter and surrendered? There's no evidence in the record that while Officer Nowrooski was in the back seat struggling with Mr. Bell-McGrew that he did anything along those lines. Now... Well, isn't that the problem here is that there are...is the lack of some of the evidence in this case. You know, you talked earlier about the driver's statement, Ms. Cosby I think is her name, but we have the officer's report of exactly what Ms. Cosby told the officers after this event and she does not say, she does not confirm that Officer Nowrooski asked her whether they were smoking marijuana. She simply talks about what was going on and that she said to Mr. Bell, you just be cool, there's nothing in this car and purportedly then there were statements that were made by Mr. Luis says and Bell said something about, be cool, I'm getting out, I'm struggling with assuming that the statements of Nowrooski and Bass are the evidence that governs this case without looking at the other statements that are in the police report itself that show some distinction and that plays into me this consensual, the transfer of this from a consensual encounter to an actual Terry stop. So give me your response on that. I just don't see that the police officer, particularly in light of what is at the Adams case that reminds us in cases where the witness most likely to contradict the officer's testimony is dead, the court may not simply accept what may be self-serving account by the police officer. It must look at the circumstantial evidence that if believed would tend to discredit the police officer's story and I would remind you that this would not, to say that there is a dispute of material fact, does not in this case. It just makes it a determination of a jury that has a right to decide questions of credibility and honesty. So that's the situation we're in here, supposedly looking at every piece of evidence in the light most favorable to this plaintiff. So make your case for me why you don't have a problem with the standard of review here. Well the first thing is that those witness statements that were included within the police report should not be considered on summary judgment for the fact that they're hearsay and there's not an exception. Well but we under, you know the distinction there is that it does not have to be in the form that is admissible. The content can be considered in this type of analysis as long as it can be transferred by the time of trial into admissible evidence. In other words, the estate could bring Louise and Miss Cosby in and have them testify at trial. So that's usable evidence at this stage. Even if that evidence is considered, regarding Miss Cosby's, the summary of her witness statement that was provided, I don't believe there was ever any affirmative statement by Miss Cosby that would dispute any statement about the conversation between Officer Nowrooski and her about the marijuana smoking. In that it would create a genuine dispute of fact. Well let me ask you about, she says that at 1373 she was asked about marijuana and she says, well I admit that when we were in high school we smoked weed, but she said as far as recently she had no idea what Mr. Bell might have been doing. Now, if she was sitting in that car and somebody was smoking weed and it was Mr. Bell, she had every idea, but that's not what her statement to the police said, nor is it what is in this report. And I don't believe that's significant probative evidence that would create a genuine dispute of fact about the reasonable suspicion. The common sense inferences that were created by, that could be, that were created by the characteristics of the area in which the CRT was patrolling that day. As far as Mr. Corcello's statement, he also, what's also quoted in that report is that he can't be sure what Mr. Bell McGrew said. So I don't believe that that creates significant probative evidence that at that point in time from the perspective of a reasonable officer, either that the officers heard that statement or would, enough time had elapsed for Officer Nowrooski to interpret his movements such that the threat to both Officer Bassey, Officer Nowrooski or anyone else was no longer present. I see that my time has expired. Let me ask one more question. I'm struggling with the whole concept here. Because what you've got is a group of officers in an area that are there for the purpose of finding felony concerns, let's say. And every time they stop anyone, every time they undertake a consensual discussion in that neighborhood, your argument before this court is going to be they had a right to use deadly force if they see anything of concern in the vehicle that is legally parked because it's in this dangerous area, because it's their job to find felonies. I'm concerned with the concept here that almost every stop or every time anyone is examined in that neighborhood, we're going to have this same sort of discussion. Explain to me why that's not what you see because it's going to be converted from consensual even though the person in the car is saying, what did I do? What did I do wrong, officer? We're still back in the same situation and we're using deadly force. My time has expired but may I answer that question? Yes, you can answer the question. The defendants here in this case are not arguing that the basis for the investigatory stop provided the basis for the use of lethal force. It was only the weapon plus the interaction between Officer Naruski and Mr. Bell McGrew in the backseat of that vehicle that created the probable cause to use lethal force by less than five seconds later. We're distinguishing here the basis for the investigatory stop from the basis for the use of lethal force. The basis of the consensual. Thank you. I would like to address a couple of the issues that came up on rebuttal. In terms of the dispute over the beginning of the consensual stop and whether it was converted to a Terry stop, there's further dispute in that the driver actually testified that she asked, did we do anything wrong, trying to determine whether there was any actual allegation of criminal offense. The basis for the stop is really irrelevant in this case. The basis for the police action occurred when the individual, Mr. Bell McGrew, was witnessed seeking to either dispose of or obtain a weapon from his pocket. What's significant about that, Your Honor, is if it does not convert to any kind of a Terry stop, if it's simply a consensual encounter, then Mr. Bell McGrew is permitted to move about. What if they saw him outside the car and he apparently is trying to access a weapon? The officers are going to have the same reaction because they're in danger, potentially. To say that simply moving around, at that point he's allowed to, during a consensual encounter, he can walk away. He can refuse to comply with a command. There's no reason why he should detain Terry. That's not what he did. He made movements that were suggestive of attempting to access or dispose of something within the car which was determined to be a weapon prior to the moment of the shoot. He was moving around in a legally parked car. That's the reality of what it was. He was moving around in a way that, according to the evidence, suggested to the officers who are experienced in knowing how people move when they're trying to access or dispose of weapons. According to that version of the facts, and there isn't really anything to counter it, nobody says he was sitting perfectly quiet and still with no movement in the back seat. He did, in fact, have a weapon, we know. Considering the fact that the forensic evidence, the other evidence of the officers who arrived on the scene after, show, in the light most favorable to a jury, that Naruski is telling a lie about what was happening at the moment that he shot Bell McGrew at the car. It's not a lie. He might be mistaken, but we determine whether a reasonable officer would have reacted this way under the circumstances, not whether he's factually correct or not. Isn't that true? I believe that the question is whether it is reasonable for an officer to offer a justification for the use of deadly force that is contradicted by other evidence in the record. He may be mistaken, but would a reasonable officer have that perception? Was that perception reasonable, and therefore is his reaction reasonable? Not whether it's factually correct or not. Well, the fact, the issue, the importance of... They're two different things, right? Yes, but the issue of the disputed facts in the record, whether Naruski was factually correct and not mistaken, is a jury question, Judge. I know, but whether he's factually correct or not is not material, I don't think. It's the reasonableness of his perception and the reasonableness of his action and not whether it's factually correct or not. I think you're confusing the two, that's all. Well, if he's mistaken under the law, he's given considerable leeway to be mistaken. That is true under the Federal Qualified Immunity analysis, but in this case, he shoots Deontay in the back while he's sitting inside the car. After, and Judge, this goes to one of your questions to opposing counsel, was there any moment where he stopped and put his hands up or whatever? The testimony is that he said the words, chill, I'm getting out. There was no continued struggle, and in fact, the evidence is not that he was struggling to not give up the gun in the back of the car. There were no commands given to him to give him the gun or put his hands up when Naruski is on top of him in the back of the car. What do you think Naruski's, I mean, what's the struggle about if it's not over the gun? I don't know what it's about. He was taken into the car. I know, but I mean, they must be struggling over the gun. They're not just wrestling for the fun of it. It's not reasonable for an officer to believe that a person is trying to keep the gun away from him where there's no commands ever given for Deontay to comply with anything. Why isn't it reasonable? I mean, there are tons of reasons that people don't want an officer to know they have a gun. I mean, one, maybe they just want to conceal it. Two, maybe they have a prior record. You know, there could be, you know, and they're not entitled to have the gun. I mean, there could be many reasons that an individual does not want an officer to be aware that they're armed. Sure, but the clearly established law is that the mere possession of that gun is not sufficient to justify deadly force, and that's what the city is asking this court to uphold. All right. Thank you very much. I appreciate it. All right. The court may call the next case.